UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
FRED EHRLICH,                                          JURY TRIAL DEMANDED

            Plaintiff(s),
                                                          Index No.
    -against-
                                             **07 CIV 11597**

ALFRED A. GATTA, as the Village Manager            **COMPLAINT**
of Scarsdale, WALTER J. HANDELMAN as
the Mayor of Scarsdale, JOHN A. BROGAN as
Scarsdale Police Chief, and the VILLAGE and
TOWN OF SCARSDALE,

           Defendants.
------------------------------------------------------------x   JUDGE ROBINSON

      FRED EHRLICH, appearing by his attorney William L. Barish, alleges the following:

      1. This is an action for a mandatory injunction and damages under the Americans With Disabilities Act, 42 U.S.C. § 12101 et seq., hereinafter "the ADA," and New York law.

      2. The ADA provides, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity ...." 42 U.S.C. § 12132.

      3. Plaintiff maintains that the defendant municipality has violated the ADA including the interpretative regulation at 28 C.F.R. section 35.130(b)(7), and state law, by providing insufficient handicapped parking spaces for the rail commuters to whom it has sold handicapped, commuter parking permits.



## JURISDICTION

4. Jurisdiction and venue of plaintiff's federal claims are based upon 42 U.S.C. §12133, which incorporates by reference the enforcement provisions of 42 U.S.C. 2000e-5(f)(3) by virtue of 29 U.S.C. §794a.

5. All parties are residents of Westchester County in the state of New York, and within the territorial jurisdiction of this court.

6. Jurisdiction of plaintiff's state law claim is based upon the court's supplemental jurisdiction provided by 28 U.S.C. § 1367(a).

## THE PARTIES

7. Plaintiff Fred Ehrlich is a disabled, seventy-five year old attorney and Scarsdale resident who commutes to work in Manhattan from the Scarsdale Metro-North train station, "the Station."

8. Defendants Village of Scarsdale and Town of Scarsdale are co-extensive municipal corporations organized under the laws of the state of New York (collectively hereinafter "the Village").

9. Defendant Alfred A. Gatta is the Village Manager, and the administrative head of Village government, and is joined in this action in his representative capacity.

10. Defendant Walter J. Handelman is the Mayor of the Village, and is joined in this action in his representative capacity.

11. Defendant John A. Brogan is the Police Chief of the Village, and is joined in this action in his representative capacity.

## COMMUTER PARKING IN THE VILLAGE

12. The Village owns and operates a multi-tiered parking structure known as "the Freightway Garage," hereinafter "the Garage," within walking distance of the Station.

13. At all relevant times, plaintiff has held a Freightway Permit.

14. Residents who purchase permits for Garage parking from the Village, hereinafter "Freightway Permits," are entitled to park at un-metered, 24-hour parking spaces at the Garage on a daily basis.

15. The Village provides no other parking permits appropriate for resident rail commuters.

16. Upon information and belief, the Garage and the Village's adjoining lots can accommodate more than 400 parked cars.

17. On information and belief, the Village has jurisdiction over the streets adjacent to the Station, with the power to designate parking spaces for disabled persons under New York law including Article 39 of the Vehicle and Traffic Law.

18. Upon information and belief, the Village has created more than 100 metered parking spaces at the Station.

## PLAINTIFF'S DISABILITY

19. On or about February 17, 2004, plaintiff was struck by a bus, sustaining severe personal injuries, including pelvic fractures, fractured acetabulum of the left leg and severe lower back injuries.

20. In or about May 2005 plaintiff had an L4 laminectomy, and a right descending L3 facetectomy, as noted in the appended MRI report.

21. Plaintiff suffers from a moderate-to-severe central stenosis

due to disc bulge and residual ligaments, a moderate L2/L3 central stenosis and a mild to moderate bilateral L4/5 narrowing due to disc bulge.

22. Plaintiff experiences continuous pain that radiates throughout his lower back, buttocks, and legs, and that is aggravated by walking and standing.

23. As a result of his disabling back condition, plaintiff received handicapped parking permits from the City of New York and from the Village.

24. The handicapped permit from the City, designated a "Parking Permit for People with Disabilities," allows plaintiff to park in the City at most "No Parking" zones; at parking meters, without depositing a coin; and, except for specified restricted hours, in "No Standing, Trucks Loading and Unloading" zones.

25. The handicapped parking permit issued by the Village initially permitted plaintiff to use an outdoor handicapped space adjacent to the Garage.

26. Upon information and belief, when the Village provided this outdoor handicapped space to plaintiff, it was the only handicapped space in the Village for people with Freightway Permits, and the only handicapped space available to Village residents commuting from the Station.

27. Upon information and belief, the Village currently provides only five handicapped parking spaces for Freightway Permit holders.

28. The five handicapped spaces for holders of Freightway Permits, hereinafter "HFP Spaces," are at the Station.

29. The only handicapped commuter parking available to plaintiff are the HFP Spaces at the Station.

## FIRST CAUSE OF ACTION UNDER THE ADA
## FOR INJUNCTIVE RELIEF

30. On information and belief, by the time the Village added the five HFP Spaces at the Station, it had issued handicapped permits to more than five people with Freightway Permits.

31. On information and belief, the Village has issued more than five outstanding handicapped permits to commuters with Freightway Permits.

32. The five HFP Spaces are usually occupied when plaintiff arrives at the Station to take a train to work.

33. When no HFP Space is available, plaintiff often parks at metered parking spaces at the Station.

34. When plaintiff parks at metered spaces at the Station, the Village usually issues "time expired" parking summonses to him.

35. By letters of January 29, 2007, April 10, 2007, June 18, 2007, June 20, 2007, July 26, 2007, and November 2, 2007, plaintiff asked the Village to dismiss the summonses he received for parking at metered spaces at the Station when the HFP Spaces were occupied.

36. Plaintiff's letters also asked the Village to add more parking spaces for handicapped commuters.

37. Expressing the same dismay as his other letters, plaintiff's letter of June 18, 2007 states:

> It is apparent that the five spaces are inadequate because they are often filled by other disabled persons. As I have advised you in the past, it is imperative that I utilize a disabled parking space so that I can continue to go to my office or court, etc, in Manhattan.

38. The Village had refused to provide additional HFP Spaces.

39. The Village has refused to allow plaintiff to use metered parking at the Station without penalty, when other commuters with Freightway Permits and handicapped permits have parked in the five HFP Spaces.

40. Plaintiff has outstanding "time expired" tickets for using metered spaces at the Station.

41. Although it cancelled some of plaintiff's parking tickets in the past, the Village has refused to cancel plaintiff's outstanding tickets or any tickets plaintiff may receive in the future.

42. Village Justice John H. Galloway has advised plaintiff that the court will reject plaintiff's ADA-based defenses and will dismiss no further parking summonses issued to plaintiff unless directed to do so by the defendant Village Manager.

43. Plaintiff and his wife telephoned Village Manager Gatta some half-dozen times to discuss the lack of sufficient HFP Spaces and the parking tickets that plaintiff received as a result.

44. Each time plaintiff and his wife telephoned Gatta they were told that he was unavailable.

45. Plaintiff went to Gatta's office several times to speak with him about the lack of sufficient HFP Spaces and about the tickets plaintiff received as a result.

46. Each time plaintiff arrived at Gatta's office, he was told that Gatta was unavailable.

47. Plaintiff has received no indication that Gatta has directed dismissal of his parking tickets.

48. Plaintiff has no adequate remedy at law.

49. The Court should enjoin the defendant officials of the Village of

Scarsdale from issuing parking summonses at the Station to disabled residents with permits for Freightway and handicapped parking, until such time as the court finds that the Village has provided handicapped parking in accordance with the ADA for disabled residents entraining at the Village Station.

## SECOND CAUSE OF ACTION
## FOR DAMAGES UNDER THE ADA

50. Plaintiff repeats the prior allegations of the complaint as if fully set forth herein.

51. Defendants' failure to provide sufficient handicapped commuter parking has caused plaintiff to suffer delays, emotional distress, further pain and related difficulties when plaintiff had to drive back to his home after finding no handicapped parking at the Station, and arrange alternative transportation to and from the Station.

52. On information and belief, defendants' violation of the ADA was knowing and intentional.

53. Plaintiff is entitled to recover damages, in an amount to be determined by the court, for the expenses, pain, and distress he sustained as a result of defendants' failure to provide the handicapped parking required by law.

54. Plaintiff is also entitled to attorneys' fees under the ADA, 42 U.S.C. §12133, incorporating remedies set out in 29 U.S.C. §794a, incorporating remedies provided in 42 U.S.C. 2000e-16, including the application 42 U.S.C. 2000e-5(f) through (k), and in Title VI of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000d et seq.

### THIRD CAUSE OF ACTION UNDER STATE LAW
### FOR INJUNCTIVE RELIEF

55. Plaintiff repeats the prior allegations of the complaint as if fully set forth herein.

56. Upon information and belief, the Village is required to provide at least nine handicapped parking spaces at the Garage under state law.

57. Upon information and belief, no handicapped parking is available in the Garage for Village residents with permits for all-day Garage parking.

58. The Court should enjoin the defendant officials of the Village of Scarsdale from issuing parking summonses to disabled residents with permits for Freightway parking and handicapped parking, until such time as the court finds that the Village has provided the HFP Spaces required by state law.

### FOURTH CAUSE OF ACTION
### FOR DAMAGES UNDER STATE LAW

59. Plaintiff repeats the prior allegations of the complaint as if fully set forth herein.

60. Plaintiff is entitled to recover damages for his expenses, pain, emotional distress and attorneys' fees resulting from the Village's violation of state law governing handicapped parking.

**WHEREFORE,** plaintiff demands judgment against defendants

(a) on the First Cause Of Action, enjoining defendants from issuing parking summonses at the Station to plaintiff and other disabled residents with permits for Freightway and handicapped parking, until such time as the court finds that the Village has provided handicapped parking in accordance with the ADA for disabled residents entraining at the Village Station.

(b) on the Second Cause Of Action, awarding plaintiff damages in an amount to be determined by the court for failing to provide handicapped commuter parking in accordance with the ADA.

(c) on the Third Cause Of Action enjoining defendants from issuing parking summonses at the Station to plaintiff and other disabled residents with permits for Freightway and handicapped parking, until such time as the court finds that the Village has provided handicapped parking at the Garage in accordance with state law.

(d) on the Fourth Cause of Action, awarding plaintiff damages in an amount to be determined by the court for failing to provide handicapped parking at the Garage in accordance with state law.

together with the costs and disbursements of this action including reasonable attorneys' fees.

dated: December 14, 2007

William L. Barish
Attorney for Plaintiff
30 Glenn Street
White Plains, New York 10603
(914) 285-9471
W.L.B. 6105

## CORINTHIAN DIAGNOSTIC RADIOLOGY

345 EAST 37TH STREET, SUITE 204, NEW YORK, NEW YORK 10016   TEL: 212-697-8900   FAX: 212-697-8464   www.cdr-nyc.com

MRI • CT • X-RAY • ULTRASOUND • MYELOGRAMS

August 24, 2007

Dr. Emile Hiesiger
Bellevue Hospital
462 First Avenue
Room A548
New York, NY 10016

RE: Fred Erhlich
SS#: 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    EX#: 57009-01
Tel: 212-370-5244  914-725-5764

Date of Examination: 08/23/07

Examination: MRI OF THE LUMBAR SPINE WITHOUT CONTRAST
---

TECHNIQUE - Sagittal T1W, sagittal proton density, sagittal T2W and axial proton density images. Several CT slices were also obtained.

SYMPTOMS/HISTORY: Back pain, bilateral into buttocks, difficulty walking.

SUMMARY:

1) **At L3/4: mild retrolisthesis, moderate to severe central stenosis due to disc bulge and residual ligaments.**

2) **At L4/5: mild bilateral foraminal narrowing and adequate decompression via laminectomy.**

FINDINGS:

VERTEBRAE - Mild retrolistheses of L3 on L4 and of L2 on L3, the remaining AP alignment is intact, vertebral heights are intact.

DISCS - Moderate L2/3, L5/S1 and L1/2 degeneration, the rest are intact.

CANAL - Developmentally very small bony canal, s/p an L4 laminectomy and a right L3 hemilaminotomy and facetectomy. There is severe L3/4 central stenosis due to disc bulge and residual ligaments. There is a moderate L2/3 central stenosis, the conus is normal.

FORAMINA - Mild to moderate bilateral L4/5 narrowing due to disc bulge, the rest are patent.

LATERAL RECESSES - Normal post operative scarring in the L5 and right L4 recesses, the rest are clear.

POSTERIOR ELEMENTS - L4 laminectomy, right descending L3 facetectomy, the rest above and below are intact.

SOFT TISSUES - Marked atrophy of the distal erector spinae muscles, involution of the remainder are present. The aorta is normal in diameter with punctate calcifications.

Sincerely,

L.A. Saint-Louis, M.D.

LASL:abc

# LAW OFFICES OF
# FRED EHRLICH, P.C.

LINCOLN BUILDING · 60 EAST 42ND STREET, 46TH FLOOR · NEW YORK, NY 10165-0006
TEL: 212-370-5244 · FAX: 212-370-9145 · E-MAIL: ehrlichlaw@aol.com

**Fred Ehrlich**
ADMITTED IN NY & FL

**THEODORE P. KAPLAN**
ADMITTED IN NY, NJ & CT

# FAX TRANSMISSION SHEET

| Date | December 12, 2007 | |
|---|---|---|
| To | William Barish | Tel No. 914-285-9471 |
| Fax No. | 914-285-1291 | |
| Re: | Information Ticket No. S030001760<br>Fred Ehrlich<br>Parking Disability Permit Holder | |
| Your File No. | | |
| From | Fred Ehrlich | |
| Our File No. | | |
| Pages, including this Sheet | 2 | |

**Message:**

**Attached is a copy of MRI report from Corinthian Diagnostic Radiology.**

This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, and return the original message to us at the above address via the United States Postal Service. Thank you.