UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

**FRED EHRLICH**,

                                 Plaintiff,             **DECLARATION**

           -against-                       07 CV 11597 (SCG)

**ALFRED A. GATTA**, as the Village Manager of Scarsdale,
**WALTER J. HANDELMAN** as the Mayor of Scarsdale,
**JOHN A. BROGAN** as Scarsdale Police Chief, and the
**VILLAGE AND TOWN OF SCARSDALE**,

                                Defendants.

--------------------------------------------------------------------X

        TERRY RICE, an attorney admitted to practice law in the United States District

Court for the Southern District of New York, states that the following is true, under

penalty of perjury:

        1.  I am a partner in Rice & Amon, attorneys for Defendants (hereinafter

collectively referred to as the "Village") in the above-captioned matter and am familiar

with the facts, circumstances and prior proceedings herein.  I make this affirmation in

support of the City's motion to dismiss the complaint pursuant to Rule 12(c).

**PRELIMINARY STATEMENT**

        2.  The instant action was commenced on or about December 27, 2007 by the

filing of a summons and complaint herein, a copy of which is annexed hereto as Exhibit

"A". Defendants answered the complaint on or about January 16, 2008, a copy of which

is annexed hereto as Exhibit "B".

3.   The instant action seeks injunctive relief and damages based upon Plaintiff's claim that the Village did not provide a sufficient number of handicapped parking spaces in the vicinity of the Scarsdale Train Station..

4.   The complaint asserts four claims against the Village. The first claim seeks injunctive relief pursuant to the ADA. The second claim seeks damages pursuant to the ADA. The third and fourth claims seek injunctive relief and damages respectively pursuant to unspecified state law.

5.   It is respectfully submitted that the complaint and the claims alleged therein should be dismissed because:

## THE COMPLAINT

6.   The complaint alleges that the Village has violated the ADA, including 28 C.F.R. § 35.130(b)(7)[1], and state law by providing insufficient parking spaces for the rail commuters to whom it has sold handicapped, commuter parking permits (¶ 3),

7.   Plaintiff alleges that he is a disabled, seventy-five year old attorney who commutes to Manhattan from the Scarsdale Metro-North train station (the "Station") (¶ 7).

8.   The complaint alleges that the Village owns and operates a multi-tiered parking garage (the "Garage") located within walking distance of the Station (¶ 12) and that Plaintiff held a permit to park in the garage ("Freightway Permit") (¶ (13). Plaintiff asserts that Village resideints who purchased Freightway Permits are entitled to part at

---

[1] 28 C.F.R. § 35.130(b)(7) states that "A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." Despite recitation of that provision, the complaint is devoid of any allegation that Plaintiff requested an accommodation, reasonable or otherwise, or that the Village denied any request for a reasonable accommodation.

un-metered, 24-hour parking spaces at the Garage (¶ 14). Plaintiff contends, upon information and belief, that the Village's adjoining parking lots can accommodate more than 400 parked cars (¶ 16). The complaint alleges, upon information and belief, that the Village has jurisdiction over the streets adjacent to the Station with the authority to designate "parking spaces for disabled persons" pursuant to New York law including Article 39 of the Vehicle and Traffic Law (¶ 17). It is further contended, upon information and belief, that the Village has created more than 100 metered parking spaces at the Station (¶ 18).

9.   Plaintiff alleges that he was struck by a bus on February 17, 2004 (¶ 19) and experiences continuous pain that is aggravated by walking and standing (¶ 22). He claims that as a result of his "disabling back condition," he received a handicapped parking permit from the Village and New York City (¶ 23). Plaintiff alleges that the handicapped parking permit issued by the Village initially allowed Plaintiff to use an outdoor handicapped parking space adjacent to the Garage (¶ 25) and that, upon information and belief, it was the only handicapped space in the Village for people with Freightway Permits and the only handicapped space available to Village residents commuting from the Station (¶ 26).[2]

10. The complaint asserts that the Village currently provides five handicapped parking spaces for Freightway Permit holders (¶ 27) which are alleged to be located at the Station (¶ 28) and are claimed to be the only handicapped commuter parking available to Plaintiff (¶ 29).

---

[2] As is related in the annexed affidavit, the Village provides nine handicapped parking spaces available for handicapped commuters.

11. Plaintiff's first claim seeking injunctive relief pursuant to the ADA alleges, upon information and belief, that by the time the Village added the five handicapped spaces at the Station, it had issued handicapped permits to more than five people with Freightway Permits (¶ 30) and that, on information and belief, the Village has issued more than five outstanding handicapped permits to commuters with Freightway permits (¶ 31).[3] Plaintiff alleges that the five handicapped spaces – then existing - are usually occupied when Plaintiff arrives at the Station to take a train to work (¶ 32) and that when such parking spaces are not available, Plaintiff often parks at metered parking spaces at the Station (¶ 33). The complaint asserts that when Plaintiff parks at metered spaces at the Station, the Village "usually issues 'time expired' parking summonses to him." (¶ 34). Plaintiff alleges that by various dated letters he requested that the Village dismiss the tickets he received for parking in metered spaces (¶ 35) and further requested that the Village add more parking spaces for handicapped commuters (¶ 36). Plaintiff contends that the Village refused to provide addition handicapped spaces (¶ 38) and has refused to allow Plaintiff to use metered parking at the Station without penalty when the handicapped spaces provided are occupied (¶ 39).

12. Plaintiff alleges that although the Village has "cancelled" some of the parking tickets issued to Plaintiff, it has refused to cancel outstanding tickets or tickets he may receive in the future and the Village Justice has "advised" Plaintiff that the court will reject potential ADA defenses, (¶ 41-42).

13. Plaintiff asserts that he has tried to telephone or visit Village Manager Gatta, but that he was unavailable on those occasions (¶ 43-46) and that he has received no

---

[3] Contrary to the implication of the allegation, handicapped permits are not issued for a specific location, but may be used in any handicapped parking space.

"indication" that Village Manager Gatta has "directed dismissal of his parking tickets." (¶ 47).[4]

14. As a result of the foregoing allegations, Plaintiff seeks an order enjoining the Village "from issuing parking summonses at the Station to disabled residents with permits for Freightway and handicapped parking, until such time as the court finds that the Village has provided handicapped parking in accordance with the ADA for disabled residents entraining at the Village Station." (¶ 49).

15. The second claim seeks damages pursuant to the ADA. Plaintiff alleges that the failure to provide sufficient handicapped computer parking has caused him to suffer "delays, emotional distress, further pain and related difficulties" when he had to drive back to his home after finding no handicapped parking at the Station and arrange alternative transportation to and from the Station (¶ 51). Without alleging any factual predicate therefore, Plaintiff claims, "upon information and belief, that the purported violation of the ADA was "knowing and intentional." (¶ 52). As a result, he contends that he is entitled to recover damages for his "expenses, pain, and distress" (¶ 53) and attorneys' fees (¶ 54).

16. Although not specifying a particular statutory provision, Plaintiff's third claim seeks injunctive relief enjoining the Village from issuing "parking summonses to disabled residents with permits for Freightway parking and handicapped parking, until such time as the court finds that the Village has provided the HFP Spaces required by state law." (¶ 58). Plaintiff bases the demand for relief on the assertion

---

[4] The Village Manager has no authority to "dismiss" a parking ticket. Once a ticket is issued, adjudication of the matter is exclusively within the authority of the Justice Court.

that, upon information and belief, the Village is required to provide at least nine handicapped parking spaces at the Garage pursuant to State law (¶ 56) and that, upon information and belief, no handicapped parking is available in the Garage for Village residents with permits for all-day Garage parking (¶ 57).

17. Lastly, again without providing any specific statutory bases, Plaintiff's fourth claim seeks damages pursuant to State law, claiming that he is "entitled to recover damages for his expenses, pain, emotional distress and attorneys' fees resulting from the Village's violation of state law governing handicapped parking." (¶ 60).

## APPLICABLE REGULATIONS

18. Neither the federal statue nor regulations provide specific requirements for the provision of handicapped parking spaces. 28 C.F.R. Part 35, Appendix A, applicable to the provision of State and Local Government services provides that "a public entity should provide an adequate number of accessible parking spaces in existing parking lots or garages over which it has jurisdiction." (§ 35.150).

19. Implementing that mandate, the New York State Uniform Fire Prevention and Building Code provides that "the provisions of this chapter [Chapter 11] and Appendix E shall control the design of facilities for accessibility to physically disabled persons." § 1101. Pursuant to Section 1106 – Table 1106, nine handicapped accessible parking spaces are required to be provided when the total number of parking spaces is between 401 and 500 (Exhibit "C"). Section 1106.7 relates that "[a]ccessible parking spaces shall be located on the shortest accessible route of travel from adjacent parking to an accessible

building entrance. Accessible parking spaces shall be dispersed among the various parking facilities provided."

**ACTION MOOT**

20. As is related in the annexed affidavit of Daniel Sarnoff, the Village provides 9 handicapped parking spaces for commuters utilizing the Freightway Garage and the 12 parking spaces adjacent to the train station. The provision of nine handicapped parking spaces complies with the requirements of the New York State Uniform Fire Prevention and Building Code. Moreover, the Village has implemented the intent of the ADA by providing seven of the nine handicapped spaces immediately adjacent to the train station.

**COMPLIANT FAILS TO STATE A CLAIM PURSUANT TO ADA**

21. As is related in the accompanying Memorandum of Law, the complaint fails to state a claim pursuant to the ADA, first, because, the complaint is devoid of any allegations that Plaintiff was excluded from a public service, activity or program as a consequence of his alleged disability. In fact, Plaintiff has the ability to park in handicapped parking spaces, the quantity of which has been provided in compliance with the only applicable objective standard and, in good faith, largely have been located adjacent to the train station. As such he has not been excluded form any public service, activity or program.

22. Moreover, as is also related in the Memorandum of Law, the ADA provides no justification or exemption from Plaintiff violating parking regulations if, as alleged, he was unable to find a convenient handicapped parking space near the train station.

23. Secondly, in order to state a viable ADA claim, a plaintiff must allege facts to demonstrate that the purported denial of a public was *solely* by reason of the plaintiff's

disability. The complaint is devoid of any such claim or factual allegation to substantiate any such unalleged predicate.

## DAMAGES NOT RECOVERABLE PURSUANT TO ADA

24. Plaintiff's vaguely asserted claims for damages based on "delays, emotional distress, further pain and related difficulties when plaintiff had to drive to his home after finding no parking at the Station, and arrange alternative transportation to and from the Station." (¶ 51) and for "expenses, pain, and distress" (¶ 53).

25. As is related in the accompanying Memorandum of Law, the damage claims are baseless as a matter of law for the numerous distinct reasons related therein.

## NO CLAIMS ASSERTED AGAINST INDIVIDUAL DEFENDANTS

26. The complaint is utterly devoid of any allegations that allege any basis for an even colorable claim against the individual Defendants. As a result, it is respectfully submitted that the claims must be dismissed as against the individual Defendants for this additional reason.

## NO COGNIZABLE STATE LAW CLAIM ALLEGED

27. The complaint contains no allegations whatsoever that provide a basis for any claim for injunctive relief or for damages pursuant to State law. As a result, it is respectfully submitted that the third and fourth claims also must be dismiseed as being baseless.

## CONCLUSION

28. It is respectfully submitted that the ADA claims are moot as a matter of law and, additionally, the complaint fails to state any claim for which relief may be granted as a matter of law.

Dated: Suffern, New York
       June 20, 2008


                                    /s/_____
                                         Terry Rice (TR 1022)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

FRED EHRLICH,                                                JURY TRIAL DEMANDED

              Plaintiff(s),                       Index No.

    -against-                                          # **07 CIV 11597**

ALFRED A. GATTA, as the Village Manager            **COMPLAINT**
of Scarsdale, WALTER J. HANDELMAN as
the Mayor of Scarsdale, JOHN A. BROGAN as
Scarsdale Police Chief, and the VILLAGE and
TOWN OF SCARSDALE,

             Defendants.                        *JUDGE ROBINSON*

------------------------------------------------------------x

      FRED EHRLICH, appearing by his attorney William L. Barish, alleges the

following:

      1.  This is an action for a mandatory injunction and damages under the

Americans With Disabilities Act, 42 U.S.C. § 12101 et seq., hereinafter "the ADA," and

New York law.

      2.  The ADA provides, "no qualified individual with a disability shall, by

reason of such disability, be excluded from participation in or be denied the benefits of

the services, programs, or activities of a public entity ...." 42 U.S.C. § 12132.

      3.  Plaintiff maintains that the defendant municipality has violated the ADA

including the interpretative regulation at 28 C.F.R. section 35.130(b)(7), and state law, by

providing insufficient handicapped parking spaces for the rail commuters to whom it has

sold handicapped, commuter parking permits.



USDC S...
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

**JURISDICTION**

4. Jurisdiction and venue of plaintiff's federal claims are based upon 42 U.S.C. §12133, which incorporates by reference the enforcement provisions of 42 U.S.C. 2000e-5(f)(3) by virtue of 29 U.S.C. §794a.

5. All parties are residents of Westchester County in the state of New York, and within the territorial jurisdiction of this court.

6. Jurisdiction of plaintiff's state law claim is based upon the court's supplemental jurisdiction provided by 28 U.S.C. § 1367(a).

**THE PARTIES**

7. Plaintiff Fred Ehrlich is a disabled, seventy-five year old attorney and Scarsdale resident who commutes to work in Manhattan from the Scarsdale Metro-North train station, "the Station."

8. Defendants Village of Scarsdale and Town of Scarsdale are co-extensive municipal corporations organized under the laws of the state of New York (collectively hereinafter "the Village").

9. Defendant Alfred A. Gatta is the Village Manager, and the administrative head of Village government, and is joined in this action in his representative capacity.

10. Defendant Walter J. Handelman is the Mayor of the Village, and is joined in this action in his representative capacity.

11. Defendant John A. Brogan is the Police Chief of the Village, and is joined in this action in his representative capacity.

**COMMUTER PARKING IN THE VILLAGE**

12. The Village owns and operates a multi-tiered parking structure known as "the Freightway Garage," hereinafter "the Garage," within walking distance of the Station.

13. At all relevant times, plaintiff has held a Freightway Permit.

14. Residents who purchase permits for Garage parking from the Village, hereinafter "Freightway Permits," are entitled to park at un-metered, 24-hour parking spaces at the Garage on a daily basis.

15. The Village provides no other parking permits appropriate for resident rail commuters.

16. Upon information and belief, the Garage and the Village's adjoining lots can accommodate more than 400 parked cars.

17. On information and belief, the Village has jurisdiction over the streets adjacent to the Station, with the power to designate parking spaces for disabled persons under New York law including Article 39 of the Vehicle and Traffic Law.

18. Upon information and belief, the Village has created more than 100 metered parking spaces at the Station.

**PLAINTIFF'S DISABILITY**

19. On or about February 17, 2004, plaintiff was struck by a bus, sustaining severe personal injuries, including pelvic fractures, fractured acetabulum of the left leg and severe lower back injuries.

20. In or about May 2005 plaintiff had an L4 laminectomy, and a right descending L3 facetectomy, as noted in the appended MRI report.

21. Plaintiff suffers from a moderate-to-severe central stenosis

due to disc bulge and residual ligaments, a moderate L2/L3 central stenosis and a mild to moderate bilateral L4/5 narrowing due to disc bulge.

22.   Plaintiff experiences continuous pain that radiates throughout his lower back, buttocks, and legs, and that is aggravated by walking and standing.

23.   As a result of his disabling back condition, plaintiff received handicapped parking permits from the City of New York and from the Village.

24.   The handicapped permit from the City, designated a "Parking Permit for People with Disabilities," allows plaintiff to park in the City at most "No Parking" zones; at parking meters, without depositing a coin; and, except for specified restricted hours, in "No Standing, Trucks Loading and Unloading" zones.

25.   The handicapped parking permit issued by the Village initially permitted plaintiff to use an outdoor handicapped space adjacent to the Garage.

26.   Upon information and belief, when the Village provided this outdoor handicapped space to plaintiff, it was the only handicapped space in the Village for people with Freightway Permits, and the only handicapped space available to Village residents commuting from the Station.

27.   Upon information and belief, the Village currently provides only five handicapped parking spaces for Freightway Permit holders.

28.   The five handicapped spaces for holders of Freightway Permits, hereinafter "HFP Spaces," are at the Station.

29.   The only handicapped commuter parking available to plaintiff are the HFP Spaces at the Station.

## FIRST CAUSE OF ACTION UNDER THE ADA
## FOR INJUNCTIVE RELIEF

30. On information and belief, by the time the Village added the five HFP Spaces at the Station, it had issued handicapped permits to more than five people with Freightway Permits.

31. On information and belief, the Village has issued more than five outstanding handicapped permits to commuters with Freightway Permits.

32. The five HFP Spaces are usually occupied when plaintiff arrives at the Station to take a train to work.

33. When no HFP Space is available, plaintiff often parks at metered parking spaces at the Station.

34. When plaintiff parks at metered spaces at the Station, the Village usually issues "time expired" parking summonses to him.

35. By letters of January 29, 2007, April 10, 2007, June 18, 2007, June 20, 2007, July 26, 2007, and November 2, 2007, plaintiff asked the Village to dismiss the summonses he received for parking at metered spaces at the Station when the HFP Spaces were occupied.

36. Plaintiff 's letters also asked the Village to add more parking spaces for handicapped commuters.

37. Expressing the same dismay as his other letters, plaintiff 's letter of June 18, 2007 states:

> It is apparent that the five spaces are inadequate because they are often filled by other disabled persons. As I have advised you in the past, it is imperative that I utilize a disabled parking space so that I can continue to go to my office or court, etc, in Manhattan.

38. The Village had refused to provide additional HFP Spaces.

39. The Village has refused to allow plaintiff to use metered parking at the Station without penalty, when other commuters with Freightway Permits and handicapped permits have parked in the five HFP Spaces.

40. Plaintiff has outstanding "time expired" tickets for using metered spaces at the Station.

41. Although it cancelled some of plaintiff's parking tickets in the past, the Village has refused to cancel plaintiff's outstanding tickets or any tickets plaintiff may receive in the future.

42. Village Justice John H. Galloway has advised plaintiff that the court will reject plaintiff's ADA-based defenses and will dismiss no further parking summonses issued to plaintiff unless directed to do so by the defendant Village Manager.

43. Plaintiff and his wife telephoned Village Manager Gatta some half-dozen times to discuss the lack of sufficient HFP Spaces and the parking tickets that plaintiff received as a result.

44. Each time plaintiff and his wife telephoned Gatta they were told that he was unavailable.

45. Plaintiff went to Gatta's office several times to speak with him about the lack of sufficient HFP Spaces and about the tickets plaintiff received as a result.

46. Each time plaintiff arrived at Gatta's office, he was told that Gatta was unavailable.

47. Plaintiff has received no indication that Gatta has directed dismissal of his parking tickets.

48. Plaintiff has no adequate remedy at law.

49. The Court should enjoin the defendant officials of the Village of

-6-

Scarsdale from issuing parking summonses at the Station to disabled residents with permits for Freightway and handicapped parking, until such time as the court finds that the Village has provided handicapped parking in accordance with the ADA for disabled residents entraining at the Village Station.

## SECOND CAUSE OF ACTION
## FOR DAMAGES UNDER THE ADA

50.   Plaintiff repeats the prior allegations of the complaint as if fully set forth herein.

51.   Defendants' failure to provide sufficient handicapped commuter parking has caused plaintiff to suffer delays, emotional distress, further pain and related difficulties when plaintiff had to drive back to his home after finding no handicapped parking at the Station, and arrange alternative transportation to and from the Station.

52.   On information and belief, defendants' violation of the ADA was knowing and intentional.

53.   Plaintiff is entitled to recover damages, in an amount to be determined by the court, for the expenses, pain, and distress he sustained as a result of defendants' failure to provide the handicapped parking required by law.

54.   Plaintiff is also entitled to attorneys' fees under the ADA, 42 U.S.C. §12133, incorporating remedies set out in 29 U.S.C. §794a, incorporating remedies provided in 42 U.S.C. 2000e-16, including the application 42 U.S.C. 2000e-5(f) through (k), and in Title VI of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000d et seq.

### THIRD CAUSE OF ACTION UNDER STATE LAW
### FOR INJUNCTIVE RELIEF

55.   Plaintiff repeats the prior allegations of the complaint as if fully set forth herein.

56.   Upon information and belief, the Village is required to provide at least nine handicapped parking spaces at the Garage under state law.

57.   Upon information and belief, no handicapped parking is available in the Garage for Village residents with permits for all-day Garage parking.

58.   The Court should enjoin the defendant officials of the Village of Scarsdale from issuing parking summonses to disabled residents with permits for Freightway parking and handicapped parking, until such time as the court finds that the Village has provided the HFP Spaces required by state law.

### FOURTH CAUSE OF ACTION
### FOR DAMAGES UNDER STATE LAW

59.   Plaintiff repeats the prior allegations of the complaint as if fully set forth herein.

60.   Plaintiff is entitled to recover damages for his expenses, pain, emotional distress and attorneys' fees resulting from the Village's violation of state law governing handicapped parking.

**WHEREFORE,** plaintiff demands judgment against defendants

(a) on the First Cause Of Action, enjoining defendants from issuing parking summonses at the Station to plaintiff and other disabled residents with permits for Freightway and handicapped parking, until such time as the court finds that the Village has provided handicapped parking in accordance with the ADA for disabled residents entraining at the Village Station.

-8-

(b) on the Second Cause Of Action, awarding plaintiff damages in an amount to be determined by the court for failing to provide handicapped commuter parking in accordance with the ADA.

(c) on the Third Cause Of Action enjoining defendants from issuing parking summonses at the Station to plaintiff and other disabled residents with permits for Freightway and handicapped parking, until such time as the court finds that the Village has provided handicapped parking at the Garage in accordance with state law.

(d) on the Fourth Cause of Action, awarding plaintiff damages in an amount to be determined by the court for failing to provide handicapped parking at the Garage in accordance with state law.

together with the costs and disbursements of this action including reasonable attorneys' fees.

dated:  December 14, 2007

William L. Barish
Attorney for Plaintiff
30 Glenn Street
White Plains, New York 10603
(914) 285-9471
W.L.B. 6105

# CORINTHIAN DIAGNOSTIC RADIOLOGY

345 EAST 37TH STREET. SUITE 204, NEW YORK, NEW YORK 10016  TEL: 212-697-8900  FAX: 212-697-8464  www.cdr-nyc.com

MRI • CT • X-RAY • ULTRASOUND • MYELOGRAMS

August 24, 2007

Dr. Emile Hiesiger
Bellevue Hospital
462 First Avenue
Room A548
New York, NY 10016

RE: Fred Erhlich
SS#: 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    EX#: 57009-01
Tel: 212-370-5244  914-725-5764

Date of Examination: 08/23/07

Examination: MRI OF THE LUMBAR SPINE WITHOUT CONTRAST
-----------------------------------------------------------------

TECHNIQUE - Sagittal T1W, sagittal proton density, sagittal T2W
and axial proton density images.  Several CT slices were also
obtained.

SYMPTOMS/HISTORY:  Back pain, bilateral into buttocks,
                   difficulty walking.

SUMMARY:

1)  At L3/4: mild retrolisthesis, moderate to severe central
    stenosis due to disc bulge and residual ligaments.

2)  At L4/5: mild bilateral foraminal narrowing and adequate
    decompression via laminectomy.

FINDINGS:

VERTEBRAE - Mild retrolistheses of L3 on L4 and of L2 on L3,
the remaining AP alignment is intact, vertebral heights are
intact.

DISCS - Moderate L2/3, L5/S1 and L1/2 degeneration, the rest
are intact.

CANAL - Developmentally very small bony canal, s/p an L4
laminectomy and a right L3 hemilaminotomy and facetectomy.
There is severe L3/4 central stenosis due to disc bulge and
residual ligaments.  There is a moderate L2/3 central stenosis,
the conus is normal.

FORAMINA - Mild to moderate bilateral L4/5 narrowing due to
disc bulge, the rest are patent.

LATERAL RECESSES - Normal post operative scarring in the L5 and
right L4 recesses, the rest are clear.

POSTERIOR ELEMENTS - L4 laminectomy, right descending L3
facetectomy, the rest above and below are intact.

SOFT TISSUES - Marked atrophy of the distal erector spinae
muscles, involution of the remainder are present.  The aorta is
normal in diameter with punctate calcifications.

Sincerely,

LASL:abc                     L.A. Saint-Louis, M.D.

# LAW OFFICES OF
# FRED EHRLICH, P.C.

LINCOLN BUILDING · 60 EAST 42ND STREET, 46TH FLOOR · NEW YORK, NY 10165-0006
TEL: 212-370-5244 · FAX: 212-370-9145 · E-MAIL: ehrlichlaw@aol.com

### Fred Ehrlich
ADMITTED IN NY & FL

### THEODORE P. KAPLAN
ADMITTED IN NY, NJ & CT

## FAX TRANSMISSION SHEET

| | |
|---|---|
| Date | December 12, 2007 |
| To | William Barish · Tel No. 914-285-9471 |
| Fax No. | 914-285-1291 |
| Re: | **Information Ticket No. S030001760**<br>**Fred Ehrlich**<br>**Parking Disability Permit Holder** |
| Your File No. | |
| From | Fred Ehrlich |
| Our File No. | |
| Pages, including this Sheet | 2 |

**Message:**

Attached is a copy of MRI report from Corinthian Diagnostic Radiology.

This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, and return the original message to us at the above address via the United States Postal Service. Thank you.

UNITED STATES DISTRCIT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

**FRED EHRLICH**,

                             Plaintiff,               **ANSWER**

          -against-                       07 CV 11597 (SCG)

**ALFRED A. GATTA**, as the Village Manager of Scarsdale,
**WALTER J. HANDELMAN** as the Mayor of Scarsdale,
**JOHN A. BROGAN** as Scarsdale Police Chief, and the
**VILLAGE AND TOWN OF SCARSDALE**,

                             Defendants.

-------------------------------------------------------------------X

        Defendants, by their attorneys, RICE & AMON, as and for their answer to the complaint herein, allege, upon information and belief, the following:

        1.   Deny each and every allegations set forth in paragraphs "3", "10", "15", "18", "26", "27", "28" and "29" of the complaint.

        2.   Deny knowledge or information sufficient to form a belief as to the allegations set forth in paragraphs "7", "13", "17", "19", "20" "21", "22", "23", "24" and "12" of the complaint.

### ANSWERING THE FIRST CLAIM

        3.   Deny each and every allegations set forth in paragraphs "34", "38", "48" and "49" of the complaint.

        4.   Deny knowledge or information sufficient to form a belief as to the allegations set forth in paragraphs "30", "31", "32", "33", "35", "36", "37", "40", "41", "42", "43", "44", "45" and "46" of the complaint.

## ANSWERING THE SECOND CLAIM

5.  Answering the allegations set forth in paragraph "50" of the complaint, Defendants repeat the denials and responses set forth in answer to paragraphs "1" through "49" of the complaint.

6.  Deny each and every allegations set forth in paragraphs "51", "52", "53" and "54" of the complaint.

## ANSWERING THE THIRD CLAIM

7.  Answering the allegations set forth in paragraph "55" of the complaint, Defendants repeat the denials and responses set forth in answer to paragraphs "1" through "54" of the complaint.

8.  Deny each and every allegations set forth in paragraphs "57" and "58" of the complaint.

9.  Deny knowledge or information sufficient to form a belief as to the allegations set forth in paragraph "56" of the complaint.

## ANSWERING THE FOURTH CLAIM

10. Answering the allegations set forth in paragraph "59" of the complaint, Defendants repeat the denials and responses set forth in answer to paragraphs "1" through "58" of the complaint.

11. Deny each and every allegations set forth in paragraphs "60" of the complaint.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

12. The complaint fails to allege facts to substantiate that Plaintiff is a "qualified individual" pursuant to the ADA.

13. As a result, the complaint fails to state a claim pursuant to the ADA.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

14. The complaint fails to allege facts to substantiate that Plaintiff has a physical or mental impairment that substantially limits one or more major life activities pursuant to the ADA.

15. As a result, the complaint fails to state a claim pursuant to the ADA.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

16. The complaint fails to allege facts to substantiate that Plaintiff was excluded from participation in, denied the benefits of, or subjected to discrimination solely because of a disability.

17. As a result, the complaint fails to state a claim pursuant to the ADA.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

18. The Village presently provides parking that is in compliance will all applicable regulations.

19. As a result, the action is moot and must be dismissed.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

20. The ADA authorizes only injunctive relief and damage claims are not cognizable pursuant to the ADA.

21. As a result, the complaint fails to state a cognizable claim for damages pursuant to the ADA.

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

22. In the alternative, compensatory damages for mental and emotional injury are not recoverable absent intentional discrimination.

23. The complaint is devoid of any factual allegations of intentional discrimination.

24. The complaint fails to state a cognizable claim for damages for mental and emotional injury.

## AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

25. Because the claims pursuant to the ADA are moot, Plaintiff is not entitled to an award of attorneys' fees as a matter of law.

## AS AND FOR A EIGHTH AFFIRMATIVE DEFENSE

26. Plaintiff's claims pursuant to the ADA are barred by virtue of the failure to provide notice to Defendants at least 30 days prior to the institution of suit.

## AS AND FOR AN NINTH AFFIRMATIVE DEFENSE

27. The ADA does not provide covered individuals with the right to violate the law or to park their vehicles in time restricted parking areas for periods in excess of the permissible time.

## AS AND FOR A TENTH AFFIRMATIVE DEFENSE

28. The state law damage claim is barred by virtue of the failure to file a timely or proper notice of claim in compliance with General Municipal Law § 50-e and CPLR § 9801.

## AS AND FOR A ELEVENTH AFFIRMATIVE DEFENSE

29. The state law damage claims are barred by sovereign immunity.

## AS AND FOR AN TWELVETH AFFIRMATIVE DEFENSE

30. The fourth cause of action fails to state any cognizable claim as a matter of law.

### AS AND FOR A THIRTEENTH AFFIRMATIVE DEFENSE

31. The complaint is devoid of any factual allegations of culpable on the part of Alfred A. Gatta, Walter J. Handelman or John A. Brogan.

32. As a result, the complaint fails to state a claim against the named individuals and should be dismissed as against them.

### AS AND FOR A FOURTEENTH AFFIRMATIVE DEFENSE

33. Plaintiff's claims are not ripe.

**WHEREFORE**, Defendants demand judgment dismissing the complaint herein, together with the costs and disbursements of the action.

Dated: Suffern, New York
      January 16, 2008

Rice & Amon

/s/_____
By: Terry Rice (TR 1022)
Attorneys for Defendants
Four Executive Boulevard
Suite 100
Suffern, New York 10901
(845) 357-4000

To: William L. Barish
    Attorney for Plaintiff
    30 Glenn Street
    White Plains, New York 10603

EXHIBIT "C"

# CHAPTER 11

# ACCESSIBILITY

## SECTION 1101
## GENERAL

**1101.1 Scope.** The provisions of this chapter and Appendix E shall control the design and construction of facilities for accessibility to physically disabled persons.

**1101.2 Design.** Buildings and facilities shall be designed and constructed to be accessible in accordance with this code and ICC/ANSI A117.1.

## SECTION 1102
## DEFINITIONS

**1102.1 Definitions.** The following words and terms shall, for the purposes of this chapter and as used elsewhere in the code, have the following meanings:

**ACCESSIBLE.** A site, building, facility or portion thereof, that complies with this chapter.

**ACCESSIBLE ROUTE.** A continuous, unobstructed path that complies with this chapter.

**ACCESSIBLE UNIT.** A dwelling unit or sleeping unit that complies with this code and Chapters 1 through 9 of ICC/ANSI A117.1.

**CIRCULATION PATH.** An exterior or interior way of passage from one place to another for pedestrians.

**COMMON USE.** Interior or exterior circulation paths, rooms, spaces or elements that are not for public use and are made available for the shared use of two or more people.

**DETECTABLE WARNING.** A standardized surface feature built in or applied to walking surfaces or other elements to warn visually impaired persons of hazards on a circulation path.

**DWELLING UNIT OR SLEEPING UNIT, MULTI-STORY.** A dwelling unit or sleeping unit with habitable space located on more than one story.

**DWELLING UNIT OR SLEEPING UNIT, TYPE A.** A dwelling unit or sleeping unit designed and constructed for accessibility in accordance with ICC/ANSI A117.1.

**DWELLING UNIT OR SLEEPING UNIT, TYPE B.** A dwelling unit or sleeping unit designed and constructed for accessibility in accordance with ICC/ANSI A117.1, consistent with the design and construction requirements of the federal Fair Housing Act.

**EMPLOYEE WORK AREA.** All or any portion of a space used only by employees and only for work. Corridors, toilet rooms, kitchenettes and break rooms are not employee work areas.

**FACILITY.** All or any portion of buildings, structures, site improvements, elements and pedestrian or vehicular routes located on a site.

**INTENDED TO BE OCCUPIED AS A RESIDENCE.** This refers to a dwelling unit or sleeping unit that can or will be used all or part of the time as the occupant's place of abode.

**MULTILEVEL ASSEMBLY SEATING.** Seating that is arranged in distinct levels where each level is comprised of either multiple rows, or a single row of box seats accessed from a separate level.

**PUBLIC ENTRANCE.** An entrance that is not a service entrance or a restricted entrance.

**PUBLIC-USE AREAS.** Interior or exterior rooms or spaces that are made available to the general public.

**RESTRICTED ENTRANCE.** An entrance that is made available for common use on a controlled basis, but not public use, and that is not a service entrance.

**SELF-SERVICE STORAGE FACILITY.** Real property designed and used for the purpose of renting or leasing individual storage spaces to customers for the purpose of storing and removing personal property on a self-service basis.

**SERVICE ENTRANCE.** An entrance intended primarily for delivery of goods or services.

**SITE.** A parcel of land bounded by a property line or a designated portion of a public right-of-way.

**WHEELCHAIR SPACE.** A space for a single wheelchair and its occupant.

## SECTION 1103
## SCOPING REQUIREMENTS

**1103.1 Where required.** Buildings and structures, temporary or permanent, including their associated sites and facilities, shall be accessible to persons with physical disabilities.

**1103.2 General exceptions.** Sites, buildings, facilities and elements shall be exempt from this chapter to the extent specified in this section.

**1103.2.1 Specific requirements.** Accessibility is not required in buildings and facilities, or portions thereof, to the extent permitted by Sections 1104 through 1110.

**1103.2.2 Existing buildings.** Existing buildings shall comply with the *Existing Building Code of New York State*.

**1103.2.3 Employee work areas.** Spaces and elements within employee work areas shall only be required to comply with Sections 907.9.1.2, 1007 and 1104.3.1 and shall be designed and constructed so that individuals with disabilities can approach, enter and exit the work area. Work areas, or portions of work areas, that are less than 150 square feet (14 $m^2$) in area and elevated 7 inches (178 mm) or more above the ground or finish floor where the elevation is essential to the function of the space shall be exempt from all requirements.

## SECTION 1106
## PARKING AND PASSENGER LOADING FACILITIES

**1106.1 Required.** Where parking is provided, accessible parking spaces in conformance with ICC/ANSI A117.1 shall be provided in compliance with Table 1106.1 except as required by Sections 1106.2 and 1106.4 and except that spaces shall be provided with access aisles at least 8 feet (2440 mm) in width. The number of accessible parking spaces shall be determined based on the total number of parking spaces provided for the facility.

**Exception:** This section does not apply to parking spaces used exclusively for buses, trucks, other delivery vehicles, law enforcement vehicles or vehicular impound and motor pools where lots accessed by the public are provided with an accessible passenger loading zone.

**TABLE 1106.1**
**ACCESSIBLE PARKING SPACES**

| TOTAL PARKING SPACES PROVIDED | REQUIRED MINIMUM NUMBER OF ACCESSIBLE SPACES |
|---|---|
| 1 to 25 | 1 |
| 26 to 50 | 2 |
| 51 to 75 | 3 |
| 76 to 100 | 4 |
| 101 to 150 | 5 |
| 151 to 200 | 6 |
| 201 to 300 | 7 |
| 301 to 400 | 8 |
| 401 to 500 | 9 |
| 501 to 1,000 | 2% of total |
| More than 1,000 | 20, plus one for each 100 over 1,000 |

**1106.2 Groups R-2 and R-3.** Two percent, but not less than one, of each type of parking space provided for occupancies in Groups R-2 and R-3, which are required to have Accessible, Type A or Type B dwelling or sleeping units, shall be accessible. Where parking is provided within or beneath a building, accessible parking spaces shall also be provided within or beneath the building.

**1106.3 Hospital outpatient facilities.** Ten percent of patient and visitor parking spaces provided to serve hospital outpatient facilities shall be accessible.

**1106.4 Rehabilitation facilities and outpatient physical therapy facilities.** Twenty percent, but not less than one, of the portion of patient and visitor parking spaces serving rehabilitation facilities and outpatient physical therapy facilities shall be accessible.

**1106.5 Signage.** Each accessible parking space shall be provided with signage displaying the international symbol of accessibility. Each access aisle shall be provided with signage reading "No Parking Anytime." Signs shall be permanently installed at a clear height of between 60 inches (1525 mm) and 84 inches (2185 mm) above grade and shall not interfere with an accessible route from an access aisle.

**1106.6 Location.** Accessible parking spaces shall be located on the shortest accessible route of travel from adjacent parking to an accessible building entrance. Accessible parking spaces shall be dispersed among the various types of parking facilities provided. In parking facilities that do not serve a particular building, accessible parking spaces shall be located on the shortest route to an accessible pedestrian entrance to the parking facility. Where buildings have multiple accessible entrances with adjacent parking, accessible parking spaces shall be dispersed and located near the accessible entrances.

**Exception:** In multilevel parking structures, for every eight or fraction of eight accessible spaces, at least one shall be in a location having a minimum vertical clearance of 98 inches (2490 mm) maintained along the vehicular route connecting the space with a designated entrance and exit. Such spaces are permitted on one level.

**1106.7 Passenger loading zones.** Passenger loading zones shall be designed and constructed in accordance with ICC/ANSI A117.1.

**1106.7.1 Continuous loading zones.** Where passenger loading zones are provided, one passenger loading zone in every continuous 100 linear feet (30.4 m) maximum of loading zone space shall be accessible.

**1106.7.2 Medical facilities.** A passenger loading zone shall be provided at an accessible entrance to licensed medical and long-term care facilities where people receive physical or medical treatment or care and where the period of stay exceeds 24 hours.

**1106.7.3 Valet parking.** A passenger loading zone shall be provided at valet parking services.

## SECTION 1107
## DWELLING UNITS AND SLEEPING UNITS

**1107.1 General.** In addition to the other requirements of this chapter, occupancies having dwelling units or sleeping units shall be provided with accessible features in accordance with this section.

**1107.2 Design.** Dwelling units and sleeping units which are required to be Accessible units or Type B shall comply with this code and the applicable portions of Chapter 10 of ICC/ANSI A117.1. Dwelling units in Groups R-2 and R-3 shall also comply with Sections 1107.2.1 and 1107.2.2. Units required to be Type B units are permitted to be designed and constructed as Accessible units or as Type A units.

**1107.2.1 Type B unit doors.** Clear width and maneuvering clearances required by Sections 404.2.2 and 404.2.3 of ICC/ANSI A117.1 shall be provided at the primary entrance door to the dwelling or sleeping unit and at all other doors within the dwelling or sleeping unit meant for human passage.

**Exception:** Maneuvering clearances shall not be required at doors of toilet or bathing facilities that are not required to be accessible.

**1107.2.2 Type B unit toilet and bathing facilities.** At least one toilet and bathing facility in the dwelling or sleeping unit shall be constructed in accordance with the toilet and

222