UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

FRED EHRLICH,

Plaintiff,

-against-

ALFRED A. GATTA, as the Village Manager of Scarsdale, WALTER J. HANDELMAN as the Mayor of Scarsdale, JOHN A. BROGAN as Scarsdale Police Chief, and the VILLAGE and TOWN OF SCARSDALE,

Defendants.

---------------------------------------------------------x

Index No.
07 CV 11597 (SCR)

ECF Case

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(C) AND FOR MOOTNESS**

William L. Barish
Attorney for Plaintiff
30 Glenn Street
White Plains, New York 10603
(914) 285-9471 WB 6105

# TABLE OF CONTENTS

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**Point I**

**THE COMPLAINT STATES A CLAIM UNDER TITLE II OF THE ADA** . . . . . . . . . . . . . . . . . . . 5

A. THE COMPLAINT INCLUDES ALL ELEMENTS OF A CLAIM UNDER TITLE II OF THE ADA. . . . . . . . . . . . . . . . . . . . . . . . . 6

1. THE COMPLAINT SUFFICIENTLY DESCRIBES THE CLAIM. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

B. EHRLICH IS ENTITLED TO ACCOMMODATIONS. . . . . . . . . . 8

C. THE COMPLAINT PROPERLY ALLEGES CAUSATION. . . . . . 10

D. THE VILLAGE MISCHARACTERIZES THE COMMUTER PARKING PROGRAM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**Point II**

**THE COMPLAINT STATES A CLAIM UNDER THE NEW YORK HUMAN RIGHTS LAW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**Point III**

**THE BUILDING CODE IS IRRELEVANT** . . . . . . . . . 13

**Point IV**

**EHRLICH MAY RECOVER COMPENSATORY DAMAGES INCLUDING DAMAGES FOR EMOTIONAL DISTRESS** . . . . . . . . . . . . . . . . . . . . . . 14

A. THE VILLAGE HAS BEEN DELIBERATELY INDIFFERENT TO THE NEEDS OF ITS HANDICAPPED COMMUTERS . . . . 15

B. EHRLICH MAY RECOVER DAMAGES FOR EMOTIONAL INJURIES UNDER THE ADA. . . . . . . . . . . . . . . 17

**Point V**

**EHRLICH'S CLAIMS ARE NOT MOOT** . . . . . . . . . . . . . . . . 18

A. THIS ACTION IS NOT MOOT BECAUSE THE COMPLAINT CONTAINS A COGNIZABLE CLAIM FOR DAMAGES. . . . . . 18

B. THE MOOTNESS CLAIM RAISES QUESTIONS OF FACT. . . 19

C. THIS ACTION IS NOT MOOT BECAUSE IT IS NOT ABSOLUTELY CLEAR THAT THE VILLAGE WILL COMPLY WITH THE ADA . . . . . . . . . . . . . . . . . . . . . . . . 19

1. THE VILLAGE CLAIMS IT IS EXEMPT FROM THE ADA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

2. THE COURT SHOULD DISCOUNT ANY BELATED VILLAGE CLAIMS OF FEALTY TO THE ADA. . . . . . 21

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

# TABLE OF AUTHORITIES

## Federal Cases

*Alexander v, Choate*, 469 U.S. 287 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Almond v. Westchester County Department of Corrections*, 425 F. Supp.2d 394 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Barnes v. Gorman*, 536 U.S. 181 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Bartlett v. New York State Board of Law Examiners*, 156 F.3d 321 (2d Cir. 1998) . . 9, 15

*Bell Atlantic Corp. v. Twombly*, – U.S. –, 127 S.Ct. 1955 (2007) . . . . . . . . . . . . . . . . . . . 7

*Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1999) . . . . . . . . . . . . . . . . . . . . . 17

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . 7

*City of Mesquite v. Alladin's Castle, Inc.*, 455 U.S. 283 (1982) . . . . . . . . . . . . . . . . . . . 19

*Cook v. Colgate University*, 992 F.2d 17 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . 18

*De La Cruz v. Guilliani*, 2002 WL 32830453 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . 18

*Douris v. Newtown Borough, Inc.*, 207 Fed. Appz. 242 (3d Cir. 2006) . . . . . . . . . . . . . 11

*Equal Employment Opportunity Commission v. Deloitte & Touche, LLP*, 2000WL 1024700 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Fink v. City of New York*, 129 F. Supp.2d 511 (E.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . 17

*Fortyune v. American Multi-Cinema*, 364 F.3d 1075 (9th Cir. 2004) . . . . . . . . . . . . . . . . 9

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn*, 280 F.3d 98 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17, 18

*Gilbert v. Hotline Delivery*, 2001 WL 799576 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . 18

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation Inc.*, 484 U.S. 49 (1987) .. 21

*Henrietta D. v. Bloomberg*, 331 F.3d 261 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . 5, 8-10

*Henry v. Gross*, 803 F.2d 757 (2d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Hilton v Wright*, 235 F.R.D. 40 (N.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Hubbard v. Samson Management Corp.*, 994 F. Supp 187 (S.D.N.Y. 1998) . . . . . . . . 7, 9

*Kelly v. Rice*, 375 F Supp.2d 203 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11

*Kornblau v. Dade County*, 86 F.3d 193 (11th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . 11

*Kuper v. Empire Blue Cross & Blue Shield*, 2003 WL 359462 (S.D.N.Y. 2003) . . . . . . 17

*Lincoln Cercpac v. Health and Hospitals Corp.*, 147 F.3d 165 (2d Cir. 1998) . . . . . . . . . 6

*Meekins v. City of New York*, 524 F. Supp.2d 402 (S.D.N.Y. 2007) . . . . . . . . . . . 7, 10, 11

*Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . 9, 10

*Sharp v. Abate*, 887 F.Supp. 695 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Sobel v. Community Access, Inc.*, 2007 WL 2076977 (S.D.N.Y. 2007) . . . . . . . . . . . . . 18

*Town of Woodbury*, 445 F.3d 136 (2d Cir 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Tsombanidis v. City of West Haven*, 352 F.3d 565 (2d Cir. 2003) . . . . . . . . . . . . . . 15, 21

*United States v. NYC Transit Authority*, 97 F.3d 672 (2d Cir. 1996) . . . . . . . . . . . . . . . 22

*Yassky v. Kings County Democratic County Committee*, 259 F. Supp.2d 210 (E.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**Federal Regulations**

28 C.F.R. app. §35.103 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9

28 C.F.R. app. §35.150 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

28 C.F.R. Part 36, Appendix A, "ADAAG" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9, 13

28 C.F.R. §35.130(b)(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

28 C.F.R. §35.130(b)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

28 C.F.R. §35.130(b)(iii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

28 C.F.R. §36.304 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

29 U.S.C. §701 *et seq.* . . . . . 6

29 U.S.C. §794a(a)(2) . . . . . 6

42 U.S.C. §12102(2)(A) . . . . . 6

42 U.S.C. §12112(b)(5)(A) . . . . . 9

42 U.S.C. §12131(1) . . . . . 7

42 U.S.C. §12131(2) . . . . . 6

42 U.S.C. §12132 . . . . . 6

42 U.S.C. §12133 . . . . . 6

42 U.S.C. §12201(b) . . . . . 14

42 U.S.C. §2000d *et seq.* . . . . . 6

45 C.F.R. §84.4(b)(2) . . . . . 9

**Federal Rules of Civil Procedure**

Rule12(c) . . . . . 7

Rule 12(b)(6) . . . . . 7

**State Statutes**

Executive Law §292(9) . . . . . 12

Executive Law §296(2)(a) . . . . . 12

Executive Law §296(2)(c)(i) . . . . . 12

Executive Law §296(2)(c)(ii) . . . . . 12

**State Regulations**

NY Building Code §1101 . . . . . 13

NY Building Code §1106 . . . . . 13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
FRED EHRLICH,

Plaintiff(s),

-against-

Index No. 07 CV 11597 (SCR)

ALFRED A. GATTA, as the Village Manager of Scarsdale, WALTER J. HANDELMAN as the Mayor of Scarsdale, JOHN A. BROGAN as Scarsdale Police Chief, and the VILLAGE and TOWN OF SCARSDALE,

ECF Case

Defendants.
-----------------------------------------------------------x

**PLAINTIFF'S MEMORANDUM IN OPPOSITION**

**Preliminary Statement**

Plaintiff Fred Ehrlich submits this memorandum in opposition to the motion of the defendants Village of Scarsdale and its various officials, hereinafter "the Village," for judgment on the pleadings under FRCP Rule 12(c), and to dismiss the complaint as moot.

As further discussed below, two well-established principals are controlling in this case. First, that a claim is moot only where it is absolutely clear that the alleged improprieties could not be expected to recur. Second, under federal and state law, disabled persons are entitled not merely to equal treatment, but to meaningful access to government services, programs and activities. Ehrlich is entitled to meaningful opportunity to commute to work from the Scarsdale train station like other commuters who have purchased parking permits from the Village.

**Statement of Facts**

**Parking in the Village**

Defendant Village of Scarsdale through its defendant officials, collectively "the Village," controls a multi-story parking garage known as the Freightway Garage, "the Garage." The Garage holds 450 cars, Sarnoff ¶3, and is located some three or four blocks from the Metro-North train station in the Village, "the Station." Ehrlich ¶2; Barish ¶2; Exhibit 2. (References to the sworn statements submitted on this motion hereinafter designated by the declarant's surname.)

The Garage is 735 feet from the handicapped ramp at the southbound platform measured on Village sidewalks. Barish ¶7. A shorter route runs through the Village's parking lot adjacent to the Garage and over two steep stairways on each side of Popham Road, which bridges the tracks. Barish ¶7; Exhibit 2.

In addition to the Garage, the Village provides parking in a large parking plaza located on the east side of the Station, and in the cul-de-sac on the west side of the Station, Depot Place. Barish ¶¶8&9. In all, the Village controls 699 parking spaces at the Garage, the parking plaza and the cul-de-sac. Exhibit 5.

The Village provides all-day, unmetered parking at the Garage to residents who purchase a Freightway Garage Parking Permit, hereinafter "FG permit" or "commuter permit." Virtually all the residents who park at the Garage are commuters. Ehrlich ¶2.

**Ehrlich's Quest for Accessible Parking**

Plaintiff Ehrlich is an elderly resident of the Village with a commuter permit who travels to work by train from the Station. The Village issued a handicapped parking permit to him in late 2004 or early 2005 after he was seriously injured in an accident. Ehrlich ¶¶3-5. When he returned to work, Ehrlich discovered that the Village had only

one parking space reserved for residents holding both commuter permits and handicapped permits, issued by the Village. (Hereinafter, such residents will be referred to as "handicapped commuters," and the two permits together, a "handicapped commuter permit.") The handicapped commuter parking space was in a lot adjacent to the Garage. Ehrlich ¶5; Sarnoff ¶6.

**Ehrlich's Requests to the Village**

Shortly after receiving a handicapped permit, Ehrlich asked the Village to relocate its handicapped commuter parking closer to the Station, by letter of March 9, 2005, and repeated his request by letter of August 21, 2006. Exhibits 6 &7. Some 21 months after receiving Ehrlich's first request, the Village moved its five handicapped commuter spaces to the Station, but only because of ongoing construction at the Garage. Sarnoff ¶11. The Village converted five unrestricted, all-day metered spaces at the Station to handicapped commuter parking. Id. Its staff determined it might be "more convenient" if the handicapped commuters were allowed to park close to the commuter trains. Sarnoff ¶10.

After a time, it became evident that more than five handicapped commuter spaces were needed. Ehrlich, who normally arrived at the Station around 9:30 a.m. to 10 a.m., was usually unable to obtain a handicapped commuter space. Ehrlich ¶10. In order to access the platform, he parked at metered spaces; received parking tickets; and protested to the Village. Id.

He tried to contact the Village Manager about the need for more handicapped commuter parking. He telephoned the Village Manager, but the Village Manager did not take his calls. He tried to meet with the Village Manager, but the Village Manager was unavailable each time Ehrlich went to his office. Ehrlich ¶¶11&12. Ehrlich also requested more handicapped commuter parking in a series of letters to the Village at

Exhibit 8, in which he wrote:

| | |
|---|---|
| January 29, 2007: | "I would hope further that you would be able to arrange for additional parking spaces for [disabled] permit holders ...." |
| April 10, 2007: | "The reason I parked where I did was that there was no unmetered parking available for disabled permit holders. ... It is apparent that the five [handicapped commuter] spaces are inadequate because they are often filled by other disabled persons." |
| June 18, 2007: | [Same] |
| June 20, 2007: | "I would suggest that you add at least one or two spaces .... "Hopefully you will be able to add additional spaces to the station so that this problem, which requires extensive communication with you, will stop." |
| July 26, 2007: | "[I]f ... this matter is not finally resolved so I am able to go to work every day without disruption, I will bring a declaratory judgment action .... "Please note all handicapped parking spaces should be as close as possible to the train station." |
| Nov. 2, 2007: | "If you cannot vacate the ticket please indicate that I wish to plead not guilty, and set an appropriate date for trial so this matter can be resolved on appeal. "As you are aware, there is an inadequate number of parking spaces for disabled persons who have permits. Since I must go to work, I have no choice but to park at a meter ...." |

There was no response from the Village.

**The Pleadings**

Finally Ehrlich sued. His complaint, Village Exhibit A, alleges that the Village violated the Americans With Disabilities Act, "ADA," and state law by providing insufficient parking for its handicapped commuters to obtain meaningful access to the Station platforms. It requests an injunction barring the Village from ticketing handicapped commuters who violate time limits at metered spaces at the Station, until the

Village establishes handicapped commuter parking in accordance with the ADA and state law. Complaint ¶¶49 & 58. It also seeks damages and attorneys fees.

In its answer, Village Exhibit B, the Village denies the material allegations of the complaint. Its answers to paragraphs 30 and 31 of the complaint also deny knowing whether more than five handicapped commuter permits were outstanding when it moved its five handicapped commuter spaces to the Station.

**The Additional Two Spaces**

After Ehrlich sued, the Village added two Handicapped commuter spaces at the Station, Sarnoff ¶13, replacing parking that the Village had designated, "Reserved For Freightway Garage Personnel." Barish ¶10.

**Argument**

**Point I**

**THE COMPLAINT STATES A CLAIM UNDER TITLE II OF THE ADA**

The ADA was enacted to ensure that disabled persons can participate as fully as possible in the life of their communities. Title I bars discrimination relating to employment; Title II bars discrimination relating to public services; and Title III bars discrimination relating to public accommodations operated by private entities. See *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003), *cert. denied*, 541 U.S. 936 (2004).

Title II extends the anti-discrimination prohibitions of section 504 of the

Rehabilitation Act, "RA 504,", to state and local government[1]. See 28 C.F.R. app. §35.103. The sole differences between RA 504 and title II are that section 504 applies only to federally funded entities and to instances where benefits are denied solely on account of disability. *See Lincoln Cercpac v. Health and Hospitals Corp.*, 147 F.3d 165, 167 (2d Cir. 1998).

**A. THE COMPLAINT INCLUDES ALL ELEMENTS OF A CLAIM UNDER TITLE II OF THE ADA.**

Title II provides at 42 U.S.C. §12132:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

The complaint sufficiently alleges each element of a cause of action under the ADA. Under the ADA, a "qualified individual with a disability" is a disabled person entitled to receive services or participate in programs and activities offered by the public entity[2]. 42 U.S.C. §12131(2). Paragraphs 13 and 23 of the complaint indicate that Ehrlich is entitled to handicapped commuter parking from the Village.

A "disabled person" is someone with "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. §12102(2)(A). Paragraphs 7 and 19-22 of the complaint allege that Ehrlich is disabled

---

[1] The rights provided by Title II of the ADA and the RA – 29 U.S.C. §701 *et seq.* – are, for the most part, the same as those provided by Title VI of the Civil Rights Act of 1964 – 42 U.S.C. §2000d *et seq.* *Compare* 29 U.S.C. § 794a(a)(2) *with* 42 U.S.C. §12133; See *Barnes v. Gorman*, 536 U.S. 181, 184-85 (2002).

[2] The ADA also applies to temporary facilities. ADAAG, 28 C.F.R. Part 36 app. §4.1.1(4).

within the meaning of the statute, and that his ability to walk and stand, among other things, is limited. Walking is a major life activity under the ADA. *See Kelly v. Rice*, 375 F Supp.2d 203, 207 (S.D.N.Y. 2005) *quoting* 29 C.F.R. §1630.2(i).

The Village is a "public entity" subject to the ADA. See 42 U.S.C. §12131(1). Paragraphs 12-18 of the complaint indicate that the Village controls parking in the Garage and on the Streets surrounding the Station, and that the Village is empowered to provide handicapped parking to disabled drivers.

Paragraphs 22, 23, 32-34, 39-41 of the complaint indicate that Ehrlich is unable to commute to work from the Station or use the Village's commuter parking program because of his disabilities. He has been unable to obtain accessible commuter parking, and has been required to pay additional parking charges — parking tickets — to park near enough to the Station to walk to the train. It is a violation to charge disabled drivers an extra fee for accessible parking. *Hubbard v. Samson Management Corp.*, 994 F. Supp 187, 191 & 193 (S.D.N.Y. 1998).

**1. THE COMPLAINT SUFFICIENTLY DESCRIBES THE CLAIM.**

The same pleading standards govern challenges to the sufficiency of a complaint under Rule 12(c) as under Rule 12(b)(6). See *Meekins v. City of New York*, 524 F. Supp.2d 402, 405 (S.D.N.Y. 2007). A complaint will suffice if, construed liberally with its allegations of fact accepted as true, and all reasonable inferences drawn in the plaintiff's favor (See *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002); *Meekins*, 524 F. Supp.2d at 405), it contains sufficient allegations of fact to indicate the grounds for the claim and to render the claim plausible. *See Bell Atlantic Corp. v. Twombly*, – U.S. –, 127 S.Ct. 1955, 1970 (2007); *Meekins*, 524 F. Supp.2d at 405-06.

The complaint alleges that Ehrlich is disabled. It alleges that the Village offers commuter parking – access to the Station for drivers who commute by train – to which he is entitled. It further alleges that Ehrlich has been unable to obtain access to the Station because of his disability – because the Village has failed to accommodate him by providing sufficient accessible parking.

These allegations suffice under Rule 12(c).

**B. EHRLICH IS ENTITLED TO ACCOMMODATIONS.**

ADA title II prohibits both direct discrimination and a failure to accommodate. The ADA requires that when an entity provides parking, reasonable handicapped parking must be provided as close as possible to the facility it serves. Under title II, handicapped persons are generally entitled not merely to the same access as others to programs and services, but to access that is meaningful and effective. "[T]he ADA 'stress[es] the concept of equal opportunity, not merely equal treatment, to eliminate discrimination'.[3]"

Accordingly, 28 C.F.R. §35.130(b)(7) provides:

> A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.

The Village may not offer commuter parking to handicapped residents "that is not as effective in affording [them an] equal opportunity ... to obtain the same result ... as that

---

[3] *Henrietta D. v. Gulianni*, 119 F. Supp.2d 181, 207 (E.D.N.Y. 2000), *aff'd sub nom. Henrietta D. v. Bloomberg*, 331 F.3d 261 (2d Cir. 2003), *cert. denied*, 541 U.S. 936 (2004), *quoting* ADA Compliance Guide ¶ 804 (Thompson Publ'g Group, Inc., 1990 and Supp. Dec. 1991).

provided to others." 28 C.F.R. §35.130(b)(iii)[4]; see 28 C.F.R. §35.130(b)(ii). A failure to make reasonable accommodations for the handicapped is, of course, itself discrimination. See *Henrietta D.*, 331 F.3d at 273-74n.7; *Fortyune v. American Multi-Cinema*, 364 F.3d 1075, 1087 (9th Cir. 2004); cf. 42 U.S.C. §12112(b)(5)(A). The cost of converting existing parking to handicapped parking, of course, is diminimus. See *Hubbard v. Samson*, 994 F. Supp. 187, 191n.5 (S.D.N.Y. 1998).

To accommodate handicapped drivers, handicapped parking for a specific facility should be located at that facility. Section 4.6.2 of the ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG") published at 28 C.F.R. Part 36, Appendix A, provides that "Accessible parking spaces serving a particular building shall be located on the shortest accessible route of travel from adjacent parking to an accessible entrance." Similarly, 28 C.F.R. §36.304 provides: "[A] public accommodation should take measures to provide access to a place of public accommodation… [such as] providing accessible parking spaces[5]."

These principals were applied in *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 335-36 (2d Cir. 1995), an action brought under Title III of the ADA. There the Second Circuit held that a co-operative corporation was required to accommodate a disabled

---

[4] To like effect is 45 C.F.R. §84.4(b)(2) promulgated under Rehabilitation Act.

[5] Although promulgated under Title III, 28 C.F.R. §36.304 is equally applicable to Title II. Title II incorporates the provisions of Titles I and III to the extent they do not conflict with the regulations under section 504 of the Rehabilitation Act. 28 C.F.R. app. §35.103; see *Bartlett v. New York State Board of Law Examiners*, 156 F.3d 321, 328 (2d Cir. 1998), vacated on other grounds and remanded, 527 U.S. 1031 (1999) (mem).

However, the program access standard under title II is significantly higher than the standard under title III. See 28 C.F.R. app. §35.150.